Leonard A. HULSEBOSCH et al., Appellants,

v.

J. Dale RAMSEY et al., Appellees.

No. 178.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 27, 1968.

A. W. Clem, Richard C. Alsup, Law Offices of Franklin R. Navarro, Houston, for appellants.

J. Paul Pomeroy, Jr., Houston, for appellees.

BARRON, Justice.

This is a suit for personal injuries filed by Leonard A. Hulsebosch and his wife, individually and as next friends of Leonard T. Hulsebosch, a minor, against J. Dale Ramsey and Joe Smith, individually and doing business as Southern Sales Stores and Southern Trading Company, defendants. The minor plaintiff was shot with a .303 Enfield rifle by Daniel G. Taylor, a sixteen-year old boy, while young Hulsebosch was riding his bicycle near the Taylor home. The minor plaintiff received extensive and serious injuries as a result of the accident.

Suit was filed against the sellers of the involved rifle, Ramsey and Smith, and it is alleged that the sellers were negligent in offering for sale a deadly and lethal weapon with defective parts to the sixteen-year old minor, Taylor, and in failing reasonably to inspect said weapon to determine that its various parts were fit for the purpose for which it was to be used. Included in plaintiffs' petition also is an allegation that the sale involved breach of an implied warranty of fitness in that the rifle was defective in certain particulars when it was sold by defendants.

The trial court after a hearing granted summary judgment in favor of the defendants based upon the pleadings, affidavits of experts and depositions of Daniel G. Taylor, the minor, Patricia Anne Taylor and Jennings Whitman. Plaintiffs have appealed from the judgment of the trial court. The Hulseboschs are appellants, and Ramsey and Smith are appellees. The appeal is based upon one point of error, and contention is made that it was error for the trial court to grant summary judgment in the presence of disputed factual questions.

Young Taylor wanted to buy his father a Christmas present and went to appellees' store to purchase a rifle and some ammunition as a gift to his father. The store manager, Jennings Whitman, refused to sell the boy a rifle and ammunition because Taylor was a minor, and the boy was told by Whitman that his father or mother would be required to purchase the rifle for him. A short time thereafter, Mrs. Patricia Anne Taylor, the stepmother of Daniel G. Taylor, appeared in the store and stated that she wanted to buy a rifle and some ammunition. Mrs. Taylor, age 24, purchased the rifle and ammunition, and the evidence fairly shows that the purchase was for the boy. But the rifle was to be given to the boy's father as a Christmas present. The rifle was purchased on December 17, 1966, and at the time of purchase, Mrs. Taylor and the boy were both in the store. The store manager was told that the purchase was for the boy as a gift from him to his father. The stepmother signed the book kept by appellees to record the sales of rifles. It is without question that Mrs. Taylor consented to the sale after appellees had earlier refused to sell the

rifle to young Taylor, because he was a minor. The boy put up his own money to purchase the rifle and ammunition. Appellees did not warn Taylor that the used Enfield rifle was dangerous or tell him not to shoot anyone, nor were any instructions given to the boy. But Taylor, who was interested in guns, had taken a Boy Scout marksmanship course and already knew that the rifle was a dangerous and deadly weapon.

Mrs. Taylor and her stepson took the .303 Enfield rifle home on December 17, 1966 and placed it under a bed. Two days later young Taylor got the rifle from under the bed and began handling it. He loaded the rifle with a full clip of ammunition, but because of a defect in the cartridge container he found it difficult to feed cartridges into the chamber. However, he was able to make the weapon function. After handling the rifle for a while young Taylor removed the clip, thinking he had completely unloaded the weapon. However, he had left a live cartridge in the chamber of the rifle, and when the boy aimed the weapon out his window and sighted-in on young Hulsebosch who was riding his bicycle, the rifle discharged and shot the minor appellant, causing the injuries and damages complained of. The Taylor boy admits that he must have pulled the trigger, and it is apparent that he failed to use the safety mechanism of the bolt action Enfield. The sworn affidavit of Officer Ralph O. Queen, of the Houston Police Department, contains the following findings and expert opinion with respect to the rifle in question:

"7. The only manner in which this firearm can be fired is to have the safety off and depress the trigger, or to have the trigger depressed approximately one-half and lever the safety device from on to off.

"Due to the above findings, it is my opinion that the only manner which this firearm can be discharged is to conscientiously (sic) load a cartridge into breech, and to depress the trigger in one of the manners stated in number 7."

■ We have carefully considered the undisputed facts of this case in relation to the summary judgment granted by the trial court, and we are of the opinion that the appellee sellers of the rifle and ammunition are not liable to the third party appellants under the facts by reason of the independent negligent acts of the purchaser of the rifle. Neither are we unmindful of the serious nature of the injuries received by young Hulsebosch, nor the fact that he was injured through no fault of his own. But in an action by the injured third party against the sellers of a rifle, when a parent had permitted the sale of the rifle to the sixteen-year old minor as a Christmas gift to his father, no liability for damages can arise on the part of the sellers in the absence of a statute creating such liability. Texas has no such statute. Article 489, Vernon's Ann. Penal Code, condemns the sale of a "pistol" to a minor without the written consent of a parent or guardian, but a pistol is to be distinguished from a rifle in that a pistol is a concealable weapon. In any event the parent in this case gave her written consent to the sale to the Taylor boy, and the sellers were advised that the purchase was to be a gift to the boy's father. Under these circumstances we cannot hold that the clearly negligent acts of young Taylor in aiming the rifle at plaintiff and pulling the trigger or some similar act ought to have been foreseen by appellees, or that appellees failed to exercise ordinary care in the sale of the rifle and ammunition.

Appellants cite such cases as Spires v. Goldberg, 26 Ga.App. 530, 106 S.E. 585, and Mautino v. Piercedale Supply Co., 338 Pa. 435, 13 A.2d 51. But those are cases where a storekeeper had sold weapons to much younger children in violation of various statutes condemning the sales. Erwin v. Dunn, 201 S.W.2d 240 (Tex.Civ.App.), writ ref., n. r. e., was a case involving the sale of fireworks to a ten-year old boy who was injured when a piece of the fire-

works exploded in his hand. The court pointed out in that case that the defendants were under a common-law duty not to sell an article capable of injuring the buyer if the buyer did not know, or could not reasonably be assumed to know, of the dangerous character of the article. However, young Taylor admitted that he knew at the time of sale that the rifle was a dangerous and deadly weapon, and his stepmother consented to the sale. In the cases cited by appellants there are two distinguishing factors, (1) the sale was made without the consent of either of the minor's parents, and (2) the minor was considerably younger than the sixteen-year old Taylor, and unlike Taylor, could not be said to know of the dangerous nature of the item in question.

On the question of proximate cause, we recognize the rule that the manner of the exact occurrence of the injury need not have been foreseeable, and we do not hold that under no circumstances could an illegal sale of firearms have been a proximate cause of appellant's injuries. See Erwin v. Dunn, supra; Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W. 2d 847. We hold, however, that the appellees exercised ordinary care as a matter of law under the circumstances. See Corey v. Kaufman & Chernick, Inc., 70 R.I. 27, 36 A.2d 103 (R.I.Sup.1944). We find no Texas cases directly in point.

Although appellants did not specifically complain in their brief that the doctrine of implied warranty applies in this case, their pleadings did include such allegations. The war surplus Enfield was a second-hand rifle purchased at a war surplus retail store, and the rifle was known to be a second-hand or used article for which the Taylors paid approximately $30.-00. Moreover, it is undisputed from young Taylor's testimony on deposition and from the affidavits in the record that there was no malfunction of the weapon at the time it was fired by Taylor. The used military rifle did precisely what it was designed to do when aimed at someone and its trigger pulled. The accident occurred by reason of a failure to operate the bolt action to unload the Enfield, and in failing to utilize the Enfield's safety mechanism in aiming the loaded gun at the minor appellant and in pulling the trigger. The cartridge clip was not in good condition, but such condition did not cause the accident. It is doubtful in a situation of this kind whether the doctrine of implied warranty or strict liability in tort would apply in any event. Cf. Sec. 402A, Restatement of the Law of Torts, Second, Comment "O", p. 356.

The judgment of the trial court is affirmed.