Jewell ELLSWORTH, Appellant,

v.

BISHOP JEWELRY AND LOAN
COMPANY, Appellee.

No. 05–87–00065–CV.

Court of Appeals of Texas,
Dallas.

Dec. 18, 1987.

Rehearing Denied Jan. 18, 1988.

Darrell Panethiere, Linda Turley, Mark Tobey, Dallas, for appellant.

Don Martinson, Todd T. Wong, Dallas, for appellee.

Before WHITHAM, McCLUNG and STEWART, JJ.

McCLUNG, Justice.

Jewell Ellsworth appeals from a take-nothing judgment rendered in a negligence action brought against Bishop Jewelry and

Loan Company. Ellsworth brings forward eight points of error. We affirm.

On July 10, 1983, Mrs. Ellsworth was wounded and her husband killed when her younger brother, P.Q. Brown, shot them with a pistol he had purchased from Bishop three days earlier. Ellsworth brought suit against Bishop on a negligence per se theory, alleging violations of federal law in the sale of the pistol to Brown. Ellsworth's initial petition also contained a cause of action alleging Bishop's retail sale of handguns constituted an abnormally dangerous and ultra hazardous activity so as to subject Bishop to strict liability under *The Restatement (Second) of Torts*, §§ 519, 520 (1977). The trial court struck this claim, holding that the claim did not state a cause of action under Texas law. Trial was had before a jury on Ellsworth's negligence per se cause of action. The jury found no negligence on the part of Bishop, and a take nothing-judgment was accordingly entered. This appeal followed.

By her first four points of error, Ellsworth alleges that the trial court erred in overruling her objection to the testimony of an unannounced expert witness called by Bishop. We disagree.

To fully understand the issues involved in these points of error, some background information is necessary. Ellsworth, in response to Bishop's written interrogatories, identified only one individual, Dr. Michael Murray, as a medical expert witness. Ellsworth stated that Dr. Murray would testify regarding "the psychological effect of the incident suffered by Mrs. Ellsworth." At trial, Dr. Murray testified not only to "the psychological effect of the incident suffered by Mrs. Ellsworth", but also as to how a schizophrenic individual (Brown) would appear to others he interacted with, even though Dr. Murray had never examined Brown. This testimony went to the main issue in the case, that is: did Bishop know or should he have known that Brown was emotionally unstable and had been committed to a mental institution?

■ Following Dr. Murray's testimony, Bishop requested the court to allow them to call Dr. Myron Weiner as a witness to respond to Dr. Murray's testimony concerning the likely appearance of Brown. Dr. Weiner had previously examined Brown. Following a bench conference, the trial court allowed Dr. Weiner to testify. Dr. Weiner was not listed as an expert witness that Bishop intended to call in their original answer or any supplemental answers to Ellsworth's interrogatories. Consequently, Dr. Weiner should not have been allowed to testify, over objection, absent a showing of good cause. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986). Under the circumstances in this case, however, we see no abuse of discretion in the trial court's implicit finding of good cause and allowing Dr. Weiner's testimony. Bishop could not have known that Dr. Weiner's testimony was needed because Bishop could not have known that Ellsworth would elicit testimony from Dr. Murray concerning Brown's appearance to others. It was this surprise testimony that necessitated Dr. Weiner's testimony. Consequently, we hold that the trial court properly allowed Dr. Weiner's testimony responding to Dr. Murray's surprise testimony. *See Gannett v. Kubeczka*, 710 S.W.2d 79, 83–85 (Tex.App.—Houston [14th Dist.] 1986, no writ). Appellants points of error one through four are overruled.

■ In Ellsworth's fifth point of error she asserts that the trial court erred in submitting special issue number nine because it failed to shift the burden of proof to Bishop to prove that Bishop did not know or had no reasonable cause to know that Brown had been committed to a mental institution. Ellsworth correctly asserts that once a plaintiff has made out a prima facie showing that a statute has been violated, the burden of coming forward with evidence to show excuse under the statute shifts to the defendant. *See Impson v. Structural Metals Inc.*, 487 S.W.2d 694 (Tex.1972). Ellsworth did not make out a prima facie showing of a violation of a statute; consequently, *Impson* is inapplicable.

The statute Bishop was alleged to have violated was 18 U.S.C. § 922(d).

18 U.S.C. § 922(d) states:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) has been adjudicated as a mental defective or has been committed to any mental institution.

Special issue No. 9 stated:

Do you find that when Bishop sold the pistol to Brown, Bishop knew or had reasonable cause to believe that Brown was a person who had been committed to a mental institution?

Answer "yes" or "no".

ANSWER: NO

It is apparent that for Ellsworth to make out a prima facie case showing Bishop violated the statute Ellsworth must have shown that Bishop sold a firearm to a person who had been committed to a mental institution *and* that Bishop knew or had reasonable cause to believe that the person had been committed to a mental institution. It was Ellsworth's burden to prove *both* of these elements. Only after having proven both of these elements would a violation of the statute have been shown and the burden shift to Bishop to come forward with evidence showing some excuse for violating the statute. Consequently, the trial court's submission of Special Issue No. 9 was proper. *See Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85, 89–91 (1954). Ellsworth's fifth point of error is overruled.

■ In Ellsworth's sixth and seventh points of error she maintains that the jury's findings that Bishop did not know or have reasonable cause to believe that Brown was emotionally unstable and had been committed to a mental institution was against the great weight and preponderance of the evidence. Since Ellsworth had the burden of proof on those issues the jury's negative answers need not be supported by affirmative evidence. *Missouri Pacific R. Co. v. Lane,* 720 S.W.2d 830, 834 (Tex.App.—Texarkana 1986, no writ); *Tatum v. Huddleson,* 711 S.W.2d 367, 369 (Tex.App.—Texarkana 1986, no writ). Nevertheless, Ellsworth may successfully challenge the jury's answers if either the facts were established as a matter of law, or the jury's failure to find those facts is against the great weight and preponderance of the evidence. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); *Tatum,* 711 S.W.2d at 369.

■ In reviewing a great weight and preponderance point we must consider and weigh all of the evidence to determine if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Missouri Pacific R. Co.,* 720 S.W.2d at 834; *Fortner v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 687 S.W.2d 8, 12 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). We may not substitute our judgment for the trier of fact and where there is conflicting evidence the jury's decision will be left undisturbed. *Horvath v. Baylor University Medical Center,* 704 S.W.2d 866, 869–70 (Tex.App.—Dallas 1985, no writ); *Martin v. United States Trust Company of New York,* 690 S.W.2d 300, 306 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The issues mentioned above were hotly contested with conflicting evidence presented by expert and lay witnesses alike. We have reviewed the record in this case and we cannot conclude that the jury findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. Ellsworth's points of error six and seven are overruled.

■ Ellsworth's eighth and final point of error alleges the trial court erred in dismissing his ultrahazardous activity claim for failing to state a cause of action. This court held in *Robertson v. Grogan Investment Co.,* 710 S.W.2d 678 (Tex.App.—Dal-

las 1986, no writ), that we would not adopt the proposition that "the manufacture or sale of a handgun is an ultrahazardous activity giving rise to strict liability ..." under sections 519 and 520 of the Restatement of Torts. We concluded that the recognition of a new cause of action is a task best left to the legislature or our Supreme Court. Ellsworth attempts to distinguish *Robertson* by saying that in *Robertson* there was no allegation that the handgun was defective, that it malfunctioned, or that the sale was illegal or negligent whereas here the petition did allege such facts. This is a distinction without substance. The portion of Ellsworth's petition that was stricken by the trial court read:

> ORDERED, ADJUDGED and DECREED that the special exception made by Defendants be, and is hereby sustained, and the following language is hereby stricken from Plaintiff's petition:
>
>> Defendants chose to engage in the retail sale of firearms, including the Raven Arms pistol in question. The sale of handguns, such as the Raven Arms pistol in question, to the general public, is an abnormally dangerous and ultrahazardous activity. Defendants having chosen to engage in this abnormally dangerous and ultrahazardous activity are subject to strict liability for the harm resulting from their activities. Defendants are strictly liable to Plaintiff for her damages resulting from selling the Raven Arms .25 automatic pistol to David Lewis Brown, that Mr. Brown used to injure Jewell Ellsworth and Elmer E. Ellsworth and to cause Mr. Ellsworth's subsequent death.

It is clear that this allegation is the same as the allegation in *Robertson*. We reiterate our belief that the recognition of a new cause of action is a task best left to the legislature or our Supreme Court. Ellsworth's eighth point of error is overruled.

The judgment is affirmed.